[Crim. No. 32768. Second Dist., Div. Five. Dec. 18, 1978.]

In re TONY S., a Minor, on Habeas Corpus.

**COUNSEL**

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Kenneth I. Clayman, Jon Chambers and Albert J. Menaster, Deputy Public Defenders, for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Sharlene A. Honnaka, Deputy Attorneys General, for Respondent.

**OPINION**

**STEPHENS, J.**—We are called upon in this habeas corpus proceeding to decide whether section 1737 of the Welfare and Institutions Code[1] applies

---

[1] All references are to the Welfare and Institutions Code unless otherwise indicated.

to all commitments to the Youth Authority or only to those from adult court.

Petitioner was adjudicated a ward of the juvenile court within the meaning of section 602. On May 11, 1978, he was ordered committed to the Youth Authority "pursuant to Section 1737 WIC."[2] The formal commitment order is a printed form entitled "COMMITMENT TO THE YOUTH AUTHORITY [JUVENILE] [W.I.C. SEC. 731]."[3] The form contains certain factual findings, also in printed form, as to the minor's age, his suitability for Youth Authority commitment, and his status as a person described in section 602. The printed portion of the second finding reads as follows: "The mental and physical condition and qualifications of this minor are such as to render it probable that he will be benefited by the reformatory educational discipline or other treatment provided by the Youth Authority." Typewritten as an appendage to this printed finding is the language "pursuant to Section 1737 of Welfare and Institutions Code."

On May 19, 1978, petitioner moved to set aside the order of commitment on the ground that section 1737 applies only to commitments of adult defendants to Youth Authority. He sought instead a commitment under the terms of section 704.[4] The motion was denied. The minute order of May 19, 1978, states: "Minor remains a ward of the court under Section 602 WIC. The order dated 5-11-78 ordering minor committed to California Youth Authority pursuant to Section 1737 WIC remains in full force and effect."

---

[2]The record before us does not contain a reporter's transcript of the May 11, 1978, proceedings. The quoted language appears in the minute order for that date.

[3]The bracketed matter is in the original.

[4]"§ 704. Procedure on determination that disposition of case requires observation and diagnosis at center of Youth Authority

"(a) If the court has determined that a minor is a person described by Section 602, or if the court has determined that a minor is a person described by Section 601 and a supplemental petition for commitment of such minor to the Youth Authority has been filed pursuant to Section 777, and such minor is otherwise eligible for commitment to the Youth Authority, the court, if it concludes that a disposition of the case in the best interest of the minor requires such observation and diagnosis as can be made at a diagnostic and treatment center of the Youth Authority, may continue the hearing and order that such minor be placed temporarily in such a center for a period not to exceed 90 days, with the further provision in such order that the Director of the Youth Authority report to the court its diagnosis and recommendations concerning the minor within the 90-day period.

"(b) The Director of Youth Authority shall, within the 90 days, cause the minor to be observed and examined and shall forward to the court his diagnosis and recommendation concerning such minor's future care, supervision, and treatment.

"(c) The Youth Authority shall accept such person if there is in effect a contract made pursuant to Section 1752.1 and if it believes that the person can be materially benefited by such diagnostic and treatment services, and if the Director of the Youth Authority

Despite this ruling, at some unspecified time between May 22d and June 8th, 1978, a second formal commitment order was filed. The words "CORRECTED COMMITMENT" are typed in red above the printed title of the order. The typewritten words "pursuant to Section 1737 of Welfare and Institutions Code" have not been appended to finding number 2, nor do they appear elsewhere in the order. No explanation for the filing of this "corrected" order appears in the record. On August 10, 1978, a nonappearance minute order was entered stating that the diagnostic report "pursuant to Section 1737 Welfare and Institutions Code" had been reviewed by the court and that no change in the previous disposition and commitment was being ordered.

Section 1737 provides: "Recall of commitment: Resentencing and crediting of time served.

"When a person has been committed to the custody of the authority, if it is deemed warranted by a diagnostic study and recommendation approved by the director, the judge who ordered the commitment or, if the judge is not available, the presiding or sole judge of the court, within 120 days of the date of commitment on his own motion, or the court, at any time thereafter upon recommendation of the director, may recall the commitment previously ordered and resentence the person as if he had not previously been sentenced. The time served while in custody of the authority shall be credited toward the term of any person resentenced pursuant to this section."

Petitioner asserts, correctly, that section 1737, by its terms, is not a commitment section at all, but rather provides for the recall of commitments previously made. Petitioner further asserts that the use of the words "resentence" and "sentenced" in section 1737 and the provision for credit for time served require the interpretation that the section is intended to apply only to adult defendants. Petitioner's argument is persuasive. ■ A juvenile court declaration of wardship is not a

---

certifies that staff and institutions are available. No such person shall be transported to any facility under the jurisdiction of the Youth Authority until the director has notified the referring court of the place to which said person is to be transported and the time at which he can be received.

"(d) The probation officer of the county in which an order is made placing a minor in a diagnostic and treatment center pursuant to this section, or any other peace officer designated by the court, shall execute the order placing such minor in the center or returning him therefrom to the court. The expense of such probation officer or other peace officer incurred in executing such order is a charge upon the county in which the court is situated."

criminal conviction (Welf. & Inst. Code, § 203), and a dispositional order following such declaration is not a sentence. (*In re Leonard R.,* 76 Cal.App.3d 100, 104 [142 Cal.Rptr. 632].) ■ Thus a person processed through the juvenile court could neither be sentenced nor resentenced as provided for in section 1737. Nor are juvenile court wards entitled to credit for predisposition time in custody. (*In re Leonard R., supra.*) ■ From this it follows that section 1737 is intended to apply to Youth Authority commitments from adult court.

The history of section 1737 reinforces this conclusion. Prior to enactment of the current version of the statute in 1975, section 1737 read: "After a court has committed a person to the authority such court has no power to suspend execution of the commitment. Nothing in this section shall limit or restrict the jurisdiction and powers of the juvenile court under Sections 775 and 779 of this code." This version of the statute clearly constituted a limitation solely on the powers of adult courts. Just as clearly, the current statute provides a measure of flexibility to adult courts in those cases in which the court chooses to exercise it. Sections 775 and 779[5] still apply to juvenile courts, however, and afford them far greater flexibility in dealing with juveniles than is provided for in section 1737.

We hold that section 1737 does not apply to Youth Authority commitments from juvenile court. If the juvenile court desires a diagnostic study of a ward, it should proceed according to the provisions of section 704. ■ A question remains, however, as to what effect the court's erroneous invocation of section 1737 has upon petitioner's present status.

[5] § 775. "Any order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper, subject to such procedural requirements as are imposed by this article."

§ 779. "The court committing a ward to the Youth Authority may thereafter change, modify, or set aside the order of commitment. Ten days' notice of the hearing of the application therefor shall be served by United States mail upon the Director of the Youth Authority. In changing, modifying, or setting aside such order of commitment, the court shall give due consideration to the effect thereof upon the discipline and parole system of the Youth Authority or of the correctional school in which the ward may have been placed by the Youth Authority. Except as in this section provided, nothing in this chapter shall be deemed to interfere with the system of parole and discharge now or hereafter established by law, or by rule of the Youth Authority, for the parole and discharge of wards of the juvenile court committed to the Youth Authority, or with the management of any school, institution, or facility under the jurisdiction of the Youth Authority. Except as in this section provided, nothing in this chapter shall be deemed to interfere with the system of transfer between institutions and facilities under the jurisdiction of the Youth Authority. [¶] However, before any inmate of a correctional school may be transferred to a state hospital, he shall first be returned to a court of competent jurisdiction and, after hearing, may be committed to a state hospital for the insane in accordance with law."

Petitioner asserts that since he was ordered committed "pursuant to section 1737," and since section 1737 is not a commitment section, he has never been formally committed and that he is now entitled to a disposition hearing. He also argues that section 704 is the exclusive statutory vehicle for obtaining a diagnostic evaluation of a juvenile court ward, that section 704 is a precommitment statute which entitles the juvenile to a hearing after the court receives the diagnostic report, and that because he did not receive such a hearing, his present commitment is invalid.

The trial court was not unaware of section 704, nor did it not invoke section 1737 through inadvertence. It was the court's intention to commit petitioner to the Youth Authority and that is what it did. The formal commitment order—citing section 731—makes that clear, as does the court's denial of petitioner's motion to set aside the order and its filing of the corrected order. The addition of the language "pursuant to Section 1737 . . ." to the body of the text of the original commitment order did not transmute that order into a precommitment diagnostic referral, nor otherwise suspend commitment. Neither did it invalidate what was an otherwise appropriate order of commitment.

In effect, all that happened was that the court obtained and reviewed a diagnostic study for which there was no statutory authority. This "error" did not confer upon petitioner a right to a further hearing to which he was not otherwise entitled. If petitioner believes that there is something helpful to him in the diagnostic report,[6] or if there are other factors of which he and his counsel are aware which suggest the possibility that a modification of the previous commitment order is called for, he may seek redress pursuant to section 778. He has not been denied due process merely because the trial court, after determining that commitment to Youth Authority was the proper form of treatment for petitioner and committing him to that institution, caused a diagnostic report to be prepared that convinced the court that its original disposition was correct.

The order to show cause is discharged. The petition for habeas corpus is denied.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied January 9, 1979, and petitioner's application for a hearing by the Supreme Court was denied February 21, 1979.

---

[6]The report recommends his continuation in the Youth Authority's custody.