[Civ. No. 18035. Third Dist. Sept. 4, 1979.]

In re ADOLPHUS T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ADOLPHUS T., Defendant and Appellant.

### COUNSEL

Randall A. Yim, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Robert D. Marshall and Vincent J. Scally, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**PARAS, J.**—A minor asks us to set aside the judgment committing him to the California Youth Authority and to grant new jurisdictional and dispositional hearings.

The 17-year-old (born Dec. 11, 1961) minor was taken into custody on June 27, 1978; a petition to declare him a ward of the court (Welf. & Inst. Code, § 602) was filed on June 29. Three counts of armed robbery (Pen. Code, § 211a) were alleged. A detention hearing was continued from June 30 to July 11, at which time the minor, represented by private counsel, with his mother and stepfather present, denied the allegations in the petition; a contested jurisdictional hearing was set for July 24 before a referee of the juvenile court. On that day the minor appeared with his

counsel, admitted count II of the petition, and obtained a dismissal of counts I and III. The mother did not appear for the hearing. She came later and was given a copy of the completed court form showing the admission and other proceedings and setting a dispositional hearing date. On August 31, the dispositional hearing was held before a juvenile court judge.

I

The record does not show any advice pursuant to section 248 (formerly § 554) of the Welfare and Institutions Code and California Rules of Court, rule 1317, of the right to seek review by a juvenile court judge of a referee's order; it is claimed that the admission is therefore void.

The section 248 requirement is necessary to avoid basic unfairness and unlawful discrimination, and is mandatory. (*In re Drexel F.* (1976) 58 Cal.App.3d 801, 804-805 [130 Cal.Rptr. 253].) However, the right relates to review of a referee's *order,* and the only orders of the referee (1) dismissed counts I and III and (2) continued the case for dispositional hearing. There is nothing in these to be reviewed; and the simple acceptance of the admission by the referee was not an "order" within the purview of the statute and rule.[1] There being nothing to review, section 248 and rule 1317 are not applicable to a proceeding in which the only subject is the admission of charges; there is no basic unfairness or unlawful discrimination to be served by review in such a case.

II

The minor further claims that the waiver and admission must be vacated because the referee (a) did not adequately inform him of his rights against self-incrimination, (b) did not ascertain whether the minor had consulted with his parents prior to the admission, (c) did not ascertain whether the minor's parents consented to the admission, and (d) did not ascertain whether the minor's counsel consented.

---

[1] At the July 24 hearing the minor's detention in juvenile hall was continued in effect pending the dispositional hearing. This arguably is also an "order." However the original detention order was made on June 30 (and continued on July 11) and no claim of invalidity of that proceeding is asserted. Moreover it is not the detention which the minor attacks, but the jurisdictional result; the continued detention followed automatically on the admission, without any discussion or dispute.

We append hereto in its entirety the pertinent portion of the admission proceedings; it demonstrates the lack of merit in these contentions. (See *post*, p. 650.) ■ The minor was fully advised (per *In re Michael M.* (1970) 11 Cal.App.3d 741, 743-744 [96 Cal.Rptr. 887]; *Boykin* v. *Alabama* (1969) 395 U.S. 238, 243, etc. [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709]), but was not specifically told that anything he said could be used against him. This is technical error (see Cal. Rules of Court, rule 1354(a)), but not of constitutional import, and in light of the entire proceedings undeniably harmless. ■ The minor's counsel obviously consented to the admission, as indeed did his mother who according to the record voiced no objection between July 24 when she learned of the jurisdictional proceedings and at least August 31 when the dispositional order was made. And it is clear from rule 1354(c)(2), that the referee had no duty to seek or obtain the consent of the minor's parents.[2]

### III

■ The next contention is that a new dispositional hearing should be granted because the juvenile judge committed the minor pursuant to Welfare and Institutions Code section 1737. *In re Tony S.* (1978) 87 Cal.App.3d 429, 433 [151 Cal.Rptr. 84], states: "We hold that section 1737 does not apply to Youth Authority commitments from juvenile court. If the juvenile court desires a diagnostic study of a ward, it should proceed according to the provisions of Section 704."

We agree with the *In re Tony S.* holding. But as that case further holds, an erroneous invocation of section 1737 does not invalidate the dispositional hearing if the record demonstrates the court's intention to commit the minor unconditionally to the Youth Authority and not merely to order a diagnostic referral. (*In re Tony S., supra,* 87 Cal.App.3d at p. 434.) Such was the case here, as the following portion of the commitment proceedings shows:

"*I intend to have a commitment to the Youth Authority under Section 1737 where the Youth Authority will have an opportunity to test and evaluate Adolphus and if they feel that there is any possible alternative other than Youth Authority, they would advise the Court and the Court might consider that, depending on the report that's received from the Youth Authority.*

---

[2] It is noteworthy that five weeks elapsed between the jurisdictional hearing and the dispositional hearing, during which the minor, his parents, and his counsel (no claim of incompetence of counsel is raised) all were doubtless fully aware of the alleged deficiencies in the jurisdictional hearing. Not a word of objection was uttered until after the dispositional hearing.

"So the Court feels that Adolphus has been tried on probation; he's utterly failed. He's before the Court on a very serious offense of armed robbery and the Court at this time will follow the recommendation of the probation department; however, it will make the commitment under the provisions of Section 1373 [*sic*] of the Welfare and Institutions Code, Adolphus. *This means that within a period of four months,* [compare the 90 days of § 704], *the Youth Authority individuals will present a written report to the Court* which will be furnished to your attorney and the district attorney and the probation department. And they will review the matter concerning your commitment to the Youth Authority and your background and will try to evaluate the potential of you to try to start helping yourself.

"So the Court will make the following disposition in this matter.

"That Adolphus will be continued as a ward of the Juvenile Court of San Joaquin County.

"The Court finds that the welfare of Adolphus requires that his custody be taken from his parents.

"The Court finds that the mental and physical conditions of Adolphus are such as to render it probable that he will be benefited by the treatment program of the California Youth Authority. Custody of Adolphus will be taken from his parents and he'll be committed to the California Youth Authority for a period of discipline and training. This commitment will be under Section 17347 [*sic*] of the Welfare and Institutions Code *and will be reviewed by the Court upon the report submitted after a period of four months.*" (Italics added.)

It is abundantly clear that the court did not have in mind a mere 90-day diagnostic referral. As in *In re Tony S., supra,* 87 Cal.App.3d at page 434, the erroneous reference to section 1737 did not invalidate the "otherwise appropriate order of commitment." Moreover on our own motion, we augmented the record on appeal to add a letter of the same juvenile court judge to the Youth Authority dated February 26, 1979; it shows that a report of the authority, sent "pursuant to Section 1737," was reviewed and considered by the judge, along with comments from the minor and his counsel, with a resulting decision to leave intact the earlier Youth Authority commitment. The matter is thus rendered moot, since the minor in any event received the benefit of a diagnostic study and recommendation.

## IV

The final contentions of the minor bear on the question of his commitment to the Youth Authority. Numerous arguments are made as to why such a disposition was contrary to law.

Upon due consideration we have found all these claims to be entirely without merit. They deserve no detailed discussion.

The judgment is affirmed.

Regan, Acting P. J., concurred.

**REYNOSO, J.**—I dissent.

Was the nature of the disposition clear? Since my reading of the record convinces me that it was not, I would remand for another dispositional hearing.

The majority is correct in its conclusion that the court intended to and did order the juvenile committed to the Youth Authority. More is required. Did the court commit pursuant to Welfare and Institutions Code section 731 (for a definite period) or pursuant to Welfare and Institutions Code section 704 (for a diagnostic referral of up to 90 days)? These are the only options open to the court. At the dispositional hearing, the court clearly stated, over and over again, that the commitment was pursuant to Welfare and Institutions Code section 1737 (not §§ 731 or 704). Confused? So am I.

The answer as to why this happened may be found in the case cited by the majority, *In re Tony S.* (1978) 87 Cal.App.3d 429 [151 Cal.Rptr. 84]. There, for the first time, an appellate court ruled that Welfare and Institutions Code section 1737 applies only to commitments from the superior court and not, as is true in the case at bench, from the juvenile court. However, the disposition hearing took place in July 1978, but *In re Tony S.* was decided five months later in December. The court simply made an erroneous disposition following an inapplicable statute.

But, argues the majority, though the juvenile court *thought* it was ordering a disposition pursuant to section 1737, the record is clear that the commitment to the Youth Authority was pursuant to section 731 and not

section 704. I am unconvinced. The dispositional hearing was hotly contested. The youth had never been in an out-of-home or custodial placement before (though he had been in trouble before). The "armed" part of the robbery was a BB gun, according to the minor's uncontested statement found in the probation officer's report. Basically, counsel was urging the juvenile court to place the minor in other than the California Youth Authority. The court's response, in part, was to indicate that it could take a second look at the juvenile *after* the diagnosis to see what was best. In fact, the court's letter of February 26, 1979, responded to the receipt of a CYA diagnostic report and concluded: "After reviewing and considering all the factors involved in this matter, the Court is convinced that commitment to the Youth Authority was a proper disposition *and no further action will be taken.*" (Italics added.) The court appeared to be under the impression that it could have acted further; that is, that it had made a commitment alien to section 704 (wherein he can act further) and not like section 1731 (wherein the court cannot change the commitment).

I cannot assume, nor does the majority, that the court would have made no different disposition if it had followed the procedures mandated by statute.

I part company with the majority in two other respects, one major and one minor.

The trial court's failure to properly advise that anything the minor said could be used against him is fatal to the proceedings; it is reversible error. I cannot join the majority in its description of such rights as a mere technical error; the right to remain silent, and the result of not remaining silent (that anything the minor says may be used against him) are intertwined. To say that one side of the coin, but not the other, is of constitutional import makes little sense to me. However, the constitutional issue need not be resolved. The rules of court are crystal clear: The juvenile court must inform "those present" that the minor has "[t]he right to remain silent, and that anything the minor says may be used against the minor in the juvenile court proceedings." (Cal. Rules of Court, rule 1354 (a)(2).) So there can be no question, the California Juvenile Court Desk Book reads: "Additional rights not enumerated to which the minor is entitled include: (1) the right to remain silent, and advice that anything the minor says can *and will* be used against him; . . ." (Italics in original.) (Thompson, Cal. Juvenile Court Deskbook (Cont.Ed.Bar 1978) p. 56.) The protection of the rights of the juvenile and the proper administration

of justice require, in my view, that a failure to properly advise at a dispositional hearing be considered prejudicial, per se.

Finally, a detail, I cannot agree that the minor's mother, not present at the dispositional hearing, can be said to have consented by her failure to thereafter voice her objection.

A petition for a rehearing was denied October 1, 1979, and appellant's petition for a hearing by the Supreme Court was denied November 1, 1979.

## APPENDIX

THE COURT: This is the matter of Adolphus T., No. 24367.

The parties present are the Minor and his attorney, Mr. Cadle.

Ms. Norris from the District Attorney and Mr. Buffo from Probation.

MS. NORRIS: It's my understanding the Minor will admit to Count II of the Complaint alleging a violation of Section 211 of the Penal Code, occuring [sic] on the 15th day of June, 1978.

In view of admission of that Count, People would be willing to dismiss Counts I and III in the interest of justice.

THE COURT: All right.

Is your full name Adolphus T.?

MR. T.: Yes..

THE COURT: Is your address 424 Jill Circle in Stockton?

MR. T.: Yes.

THE COURT: And are you sixteen and is your birthday December the 11th, 1961?

MR. T.: Yes.

THE COURT: Petition in Count II says that on or about the 15th of June you violated Section 211 of the Penal Code, armed robbery, a felony, in that you did in this judicial district on that date willfully, which means on purpose, unlawfully, which means without any lawful excuse, and by means of force and fear take personal property from the personal possession and immediate presence of Linda Bienvena (ph), and you then and there being armed with a dangerous or deadly weapon, a gun.

Do you understand what you are charged with?

MR. T.: Yes.

THE COURT: Do you admit or deny the charge?

MR. T.: Admit.

THE COURT: Do you understand that in admitting you are giving up your right to a speedy trial to decide whether or not the charge is true, do you understand that.

MR. T.: Yes.

THE COURT: If you wanted to have a trial you would have the right to be represented by Mr. Cadle, who is an attorney, and to be here in court when the witnesses would come

before the Court to testify against you, and you would have the right to cross-examine or to ask those witnesses questions through your attorney, do you understand that?

MR. T.: Yes.

THE COURT: Also at a trial you would have the right to the subpoena power of the Court to force witnesses to come in and testify for you if there were any, do you understand that?

MR. T.: Yes.

THE COURT: You would have the right to remain silent and to—or to testify yourself or to deny the charges, do you understand those rights?

MR. T.: Yes.

THE COURT: Do you understand that by admitting you are giving up all those rights?

MR. T.: Yes.

THE COURT: Further by admitting you give the Court the power to make you a ward of the Court, either send you home on probation or take you out of your home and place you in a foster home, a group home or an institution or the California Youth Authority. And if you were sent to the Youth Authority, you could be held there until you are 23 years old or for a period of five years. Do you understand those possibilities?

MR. T.: Yes.

THE COURT: Now, knowing those possibilities and the rights that you are giving up by admitting, do you still want to admit?

MR. T.: Yes.

THE COURT: And are you admitting not because anyone has forced you into it but because the charge is true.

MR. T.: Yes.

THE COURT: Other than the fact that Counts I and III will be dismissed, have any other promises been made to you?

MR. T.: No.

THE COURT: What is the factual basis?

MS. NORRIS: On the 15th day of June of this year, when Linda Bienvena, who was working at that time at a drive-in at 240 East Main reported she was approached by a group of black male juveniles, that one of them filled out a note, essentially trying to determine what they were going to purchase, and the amount, that as she was doing the transaction guns were pulled by two of the Minors and the robbery occurred.

She later had confrontation and possibly identified the Minor that initially approached her, and latent fingerprints were recovered from the note and were those of the Minor.

THE COURT: The Court finds there is a factual basis for the admission, that the Minor has knowingly and intelligently waived his rights against self-incrimination, confrontation and trial as explained, that he understands the elements of the offense and the consequences of an admission, and that he has freely and voluntarily admitted the allegations of the Petition.

I therefore find that the Petition is true, that his name, age, birth date and legal address within this County are true as stated on the petition, that he does come within Section 602 of the Welfare [&] institutions Code as alleged in Count II of the Petition.

As to Counts I and III—

MS. NORRIS: At this time we move to dismiss in the interest of justice in view of the plea to Count II.

THE COURT: Motion granted.

The Probation Officer must now write a report and recommend to the Court what action should be taken, and what date do you suggest in Department 7?

MR. BUFFO: I would recommend August 9th, your Honor, however that would require a waiver of two days, three days, I believe.

MR. CADLE: Is there a reason for the two day delay?

MR. BUFFO: We would like to have the matter heard by Judge Sullivan, and he hears the dispositions on Wednesday, and that would be on the 9th, the next Wednesday.

MR. CADLE: Waive those two days' time.

THE COURT: The matter is continued to August 9 at 2:00 p.m. on the 2nd floor of this building.

In the meantime the Minor is detained.

MR. CADLE: Have Counts I and III been dismissed then?

THE COURT: Yes.